OPINION
By GEIGER, PJ.
This matter is before this Court upon appeal from the judgment of the Court of Common Pleas awarding judgment to the plaintiff in the sum of $2,000.00, upon a verdict of the jury, as a result of injuries alleged to have been received by the plaintiff through the negligent operation of an automobile by the defendant.
In the amended petition it is alleged that on June 12, 1939, the plaintiff, at about 3:55 P. M., and other workmen of the International Harvester Company were proceeding westwardly on Park Avenue, a duly dedicated public street, extending in an east and west direction from Lagonda Avenue to Belmont Avenue, two streets running approximately north and south at this point. It is alleged that the said Park Avenue was customarily used for the workmen in proceeding to and from their place of business. There were no sidewalks on either side of Park Avenue, but each side was fenced with heavy wooden fences. It is alleged that plaintiff was, at the time, walking westwardly on the south side of Park Avenue with another workman about 2% feet from the fence bordering the south limits of the street and that when he reached a point 60 feet east of Belmont Avenue, the defendant was driving an automobile on Belmont Avenue and turned east into Park Avenue at a speed of 20 miles per hour; that without any warning to plaintiff, the defendant negligently and carelessly turned the automobile that she was driving, from its path to her right and collided with plaintiff; that the force of the collision caused the injuries complained of.
An ordinance of the city is plead to the effect that no person shall turn a vehicle at any corner at a rate exceeding one-third the otherwise legal speed limits at that place.
It is alleged that the defendant was guilty of negligence in that at the time of the collision and immediately prior thereto she was operating her automobile at a speed greater than was reasonable and proper and greater than would permit her to bring the automobile to a stop within the assured clear distance ahead; that she negligently changed the course of the automobile, which she was driving, without giving any warning visible outside of the vehicle of her intentions to do so, although many pedestrians, including plaintiff, were using said street at the time and place.
Plaintiff prays for damages in the sum of $7,500.00.
The defendant filed an amended answer admitting the situation as' to the streets as alleged in the petition and that Park Avenue is used by working men going to and from their place of employment; that plaintiff was walking abreast *179 with other workmen on ■ Park Avenue and that plaintiff collided with the automobile driven by defendant. She specifically denies that she was driving at twenty miles per hour and that she turned her automobile .from its path to the right into or against the plaintiff.
All other allegations are denied.
As a second defense, it is alleged that the injuries were due solely and entirely to the negligence of the plaintiff in that he was walking in what purports to be a public highway without looking for traffic or automobiles and that he failed to keep a lookout while walking on said highway. Defendant alleges that if the plaintiff was injured, as alleged in his petition, it was through no fault or negligence of the defendant.
While the facts alleged in the pleadings are not complicated, there were many matters incidental to this trial that have given rise to some interesting, if not difficult, Questions. As to the facts disclosed by the testimony, it might be briefly stated that Lagonda Avenue, adjacent to the International Harvester Company, and Belmont Avenue, a square west, are joined by Park Avenue, running east and west, a hard surfaced street which at that time had no sidewalks but on each side of which there were substantial fences. It would appear that the time was shortly after 3:30 P. M., when hundreds of men were leaving their work at the International Harvester Company and many were proceeding enmass westward on Park Avenue. At the same time there were some cars driven westward as well as a fewer number driven eastward on Park Avenue. Defendant was driving her car along Park Avenue to a point where she was to meet her husband whose quitting hour at the shop was 3:30 P. M. The plaintiff, together with companion workmen, was proceeding as a pedestrian westward along the south side of said street. At a point about 60 feet west of Belmont Avenue he noticed a friend endeavoring to start his car in a parking lot south of Park Avenue and after he had passed him a few; feet turned and called to him in a jocular manner in reference to his inability to start his car. In the course of his conversation with his friend, he slackened his speed-somewhat so that his fellow workmen, who had been traveling abreast of him, proceeded a little ahead. It would appear that when the plaintiff assumed his westward course he first discovered the automobile of defendant coming directly toward him and, as he avers, after it had changed its course. He admits that if he had been looking straight ahead he could have discovered the approach of that automobile in time to have avoided the accident. His companion workmen did avoid the automobile but the defendant was struck.
There is evidence that the plaintiff was driving her car at about 20 miles an hour, although she testifies that she was nob moving more than fo-ur miles an hour.
The factual issue is whether the accident is due to the negligence of the defendant in the method in which she drove her car in a crowded, narrow outlet to the shop in which many men were then going westward without discrimination as to what was the right hand side of the road or the left. The plaintiff was traveling on the south or his left hand side of Park Avenue. If the defendant properly moved her car from the course in which she was traveling, she moved it toward the south or what would be her right hand side of the road as she proceeded eastward.
*180 The defendant introduced evidence to the effect that after the plaintiff had stopped to converse with his friend about his stalled automobile that without looking he proceeded, toward the car, moving eastward at a slow rate, and collided with it striking it upon the right hand fender.
The narrow issue is whether or not the plaintiff was guilty of negligence or contributory negligence in the method he pursued as a pedestrian or whether he was without negligence and the defendant alone was guilty of negligence in the method in which she operated her car by turning it out of its course so as to strike the plaintiff.
The jury by a nine to three verdict found in favor of the plaintiff and fixed the damages in the sum of $2,000.00.
In addition to the general verdict there was a special interrogatory submitted and answered by the jury—
“Was the plaintiff, Andrew Loftus, keeping a lookout ahead for approaching automobiles?
A. (Signed by 9 members)— “Yes.”.
Appropriate motions for new trial were made and overruled and notice of appeal was given on November 10, 1941, as follows,—
“The defendant hereby gives notice of appeal to the Court of Appeals from the judgment rendered by the Court of Common Pleas in the above entitled cause on the 22nd day of November, 1940. Said appeal is on questions of law and facts.”
The words “and fact” were written in handwriting as an addition to the typewritten notice that the appeal is on questions of law. Of course, it is a law case as it was merely an action for damages and was in no way an equity case and notice of the appeal as if an equity case was erroneous.
It will be noted that the appeal was from a judgment of the Court of Common Pleas rendered on the 22nd day of November, 1940. No action of the court is noted in the transcript as of that date, but that date was the one upon which the jury filed its verdict and its answer to the interrogatory submitted. After that motions for new trial were filed, etc., and overruled. On October 22, 1941, the Court made the final entry overruling the motion for new trial and rendering judgment against the defendant. That action of the court taken on the 22nd day of October, 1941, was the final judgment of the court from which notice of appeal should have been given on questions of law.
Some members of our Court are still out of harmony with the ruling of the Supreme Court granting to appellants a right to amend their notice of appeal so as to correct the same in this Court. Here was a case in which counsel not only gave the wrong notice but gave the same to a verdict of the jury and not to the final judgment of the court. But, under the recent rulings of the Supreme Court, we assume that the appellant should be permitted to correct the errors patent in his original notice.
After the term the defendant-appellant, as plaintiff, brought an action against the plaintiff-appellee, as defendant, alleging that after the recovery of the judgment against her for $2,000.00, she filed her motion setting forth the various reasons why a new trial should be granted, which motion she alleges was then pending before the court. She alleged that subsequent to the returning of the *181 verdict she discovered certain facts which constituted new evidence which would probably or certainly change the result of the case if the same had been considered by the jury; that such evidence could not have been discovered before the trial by the use of reasonable diligence and that the same was material to the issues.
As a second cause of action it is alleged that the court reporter, ■John Martin, who reduced the proceedings during the trial to shorthand notes, died suddenly before the motion for new trial was decided as the result of the. injuries sustained in an automobile collision; that said reporter died before the transcribing of his notes and that said notes have not been transcribed and that it is impossible to transcribe them for the reason that no other reporter or stenographer can transcribe them with any degree of accuracy. It is alleged that the death of the stenographer is a further ground for the new trial.
This petition was demurred to and the demurrer sustained.
No application was made for permission to amend such petition or is there any entry of a final judgment on said petition after the sustaining of the demurrer. It seems to be the understanding of counsel, without a clear exhibition of such fact, that the action of the court in sustaining this demurrer should be incorporated as a part of the case as it stands before us for review.
Due no doubt to the inability to transcribe in its entirety the proceedings in the trial court because of the death of the reporter, the bill of exceptions includes a large number of objections to the bill as presented by the appellant and the court passed upon these ob-. jections sustaining the most of them.
A portion of the bill contains accurate transcripts of the testimony in the court below, but the entire bill seems to have been subject to correction.
The allowance of the bill by the court is in the usual form stating that the court received the bill on the 9th of December, 1941, and on the 24th day of December, 1941, certified that the bill was all the evidence offered, introduced or admitted on the trial and the court did allow and sign the bill of exceptions and did transmit the same to the clerk, all of which is accordingly done as of the September term, A. D., 1940. The trial judge made the following notation,—
“The time for signing and allowing this bill of exceptions extended to December 24, 1941.”
The bill presents the fact that the court gave five special charges at the request of counsel for defendant.
The first special charge was to the effect that-it was the duty of a pedestrian to exercise care with respect to looking before walking on a public street for his own safety and that if he failed to exercise such care the same would be negligence and if it contributed the slightest degree to the accident, he would not be entitled to recover.
The second special charge of the court is to the effect that a pedestrian must keep a lookout for approaching automobiles and if the plaintiff failed to keep such lookout and the same contributed to the accident in the slightest der gree, he could not recover.
The third special charge was to the effect that if the evidence offered by the plaintiff raised a presumption of negligence approximately contributing to the accident and if the plaintiff failed to *182 equal or counterbalance the presumption, he can not recover.
The fourth special charge was to the effect that the plaintiff must use his faculties of sight and hearing for his own safety and if the jury find that he failed to use ordinary care for his own safety that he was negligent and if the negligence contributed proximately in the slightest degree to produce his injuries, then he can not recover.
The fifth special charge given was to the effect that the law does not permit the jury to speculate as to the proximate cause of the accident and if the evidence in that respect 'is equally balanced or more favorable to the defendant, it is the duty to return the verdict for the defendant.
We note the tenor of the five charges given in order to determine whether or not the giving of these special charges had any bearing upon the refusal of the court to give the four succeeding special charges, being numbered 6, 7, 8 and 9, requested by counsel for defendant. It is quite possible that the court based his refusal to give these charges on the fact that they were largely repetitions of the charges requested and given by the court in the first five special charges.
The sixth special charge (refused) was to the effect that if the jury finds that the plaintiff was not looking in the direction of the approaching traffic and that if he had been looking he could have seen the Palmer car approaching, and if you further find that had be seen it be could have stepped aside and avoided the accident, then I charge that his failure to see the approaching car and to step from its path was negligence and if it contributed approximately to the cause of his injuries, then the verdict should be for the defendant.
The seventh special charge (refused) quotes the provisions of §6310-36 GO, to the effect that a pedestrian shall not - step into or-upon the public road or highway without looking in both directions to see what is approaching.
The eighth special charge (refnused) was to the effect that the-driver of a motor vehicle need not anticipate that a pedestrain would step suddenly to his right and directly into the path of the motor vehicle.
The ninth special charge (refused) is that if you find from the evidence that the plaintiff was looking to the rear while walking on Park Avenue and that his failure to keep a lookout ahead for the oncoming automobile contributed approximately in the slightest degree to his injuries, he can not recover.
There are also exceptions to the court’s refusal to give certain special interrogatories which we need not note except to say that, in our judgment, there was no error in refusing to submit the interrogatories.
What has given us some concern was the refusal of the court to give special charges No. 6, 8, and 9, 7 not applicable. The court does not give any reason for the refusal of these charges. We regret this, but assume that the court considered the matter amply covered by the first five charges given and the-refused charges were simply repetition in other language.
After the refusal of the charges, the entry appears,
“Thereupon after argument the-court charged the jury. Counsel for defendant took exceptions to the general charge of the court.”'
*183 *182 In other words, the bill of exceptions does not disclose the general charge of the court and we are- *183 without aid in determining whether, in such general charge, some of the matters that might be raised as prejudicial were properly stated to the jury. We recognize, however, that where there is a written request for a special charge in a civil case before argument and the charge is correct the same should be given and any error in refusing to give the same can not be corrected by the court’s general charge. Plaintiff is entitled to his correct special charges requested in writing before the argument and refusal to give correct, pertinent charges would be prejudicial error.
Defendant-appellant files six assignments of error in this Court.
(1) The Court erred in overruling the motion to withdraw a juror.
(2) The Court erred in overruling motion of appellant to withdraw case from jury and submit it to the court on the concurrent and simultaneous motions of appellee and appellant made at the end of the opening statements for directed verdict.
(3) The Court erred in failing to sustain the motions and demurrer made by appellant at the end of the appellee’s case and renewed at end of all the testimony.
(4) There is error for the reason that one of the jurors failed to disclose on the voir dire examination the fact that her father-in-law had been killed in an automobile accident.
(5) The Court erred in refusing to submit to the jury certain interrogatories and instructions submitted by the appellant.
(6) The Court erred in sustaining the demurrer of the appellee to the petition of the appellant for a new trial after term, which case has by entry been incorporated in this appeal.
Due to the already too extended length of this opinion we shall consider the assignments of error without lengthy examination.
Assignments 1 and 4 seem to be companions. 1 is to the effect that the Court erred in overruling motion to withdraw a juror and 4 is that there was error for the reason that one of the jurors failed to disclose on voir dire the fact that her father-in-law had been killed in an automobile accident.
We have examined the bill of exceptions insofar as it discloses the examination of this juror and her answers to the interrogatories and we are of the opinion that the juror was not guilty of any attempt to conceal the death of her father-in-law as the result of an accident and that had the attorney properly pursued his examination he would have secured information sufficient to enable him to challenge this juror for prejudice or peremptorily. Nos. 1 and 4 will be overruled.
Assignment No. 2 is to the effect that the Court erred in overruling motion of appellant to withdraw case from jury and submit to the Court on the concurrent and simultaneous motions of appellee and appellant made at the end of the opening statement. Counsel cite a large number of cases which he claims to be supporting of the proposition that it' was not only the right but the duty of the trial court, upon the filing of simultaneous motions after each side had made the opening statement, to withdraw the case from the jury and decide the same as a question submitted solely to the court. The first thing we note in reference to these motions is that they were not simultaneous. After counsel for plaintiff had stated his cause of action the *184 defendant made a motion for judgment which the court overruled. Thereupon, after the defendant had stated the defense, the plaintiff made a motion for judgment on the ground that no defense had been stated. The court overruled this motion. The two motions were not pending at the same time as the defendant’s motion had been overruled before the plaintiff made his motion which was likewise overruled.
We do not understand that even though the motions had been simultaneously made that the court was under obligation to assume the burden of deciding the case. In the case of Snider v Dayton Power & Light Co., 27 Abs 389, this court held that although a judge has the authority, when both parties move for a directed verdict without reservation, to determine both fact and law, he should not be compelled to do so and if he, by express statement or implication, refuses to determine the facts, the parties cannot object.
Very often when cases are complicated as to facts the court properly reserves the determination of the factual issues for the jury even though both sides have simultaneously moved for a directed verdict. We think this is only fair to the court. We are conscious of the fact that there are several cases in which it is stated that not only has the court the right to take the case from the jury, but that it is his duty to do so. These cases are practically all based upon the motion for instructed verdict after the evidence has been introduced and in that they differ from the case at bar. It is true there are several eases where the motions were made after counsel had made their opening statements, but we are content in this case to hold that there was no obligation upon the part of the court to withdraw the case from the jury and determine the same as by the court alone and that the court did not err in refusing to take the-case.
Assignment No. 5 is to the effect that the court erred in refusing to submit the interrogatories to the jury and on this we have already passed and further that the court erred in refusing to charge the. jury as requested in writing in Special Charges No. 6, 7, 8 and 9.
We have carefully examined these requested charges and find that while on the first reading they seem to be such that the court should properly have given them, on further and more careful reading we conclude that none of them was such as should have been submitted. We find no error in the-court in refusing to submit the same to the jury.
Assignment No. 6 has reference to the error complained of in the court sustaining the demurrer of the appellee to the petition of the appellant for a new trial after-term. There is nothing in the petition other than that which has. already been considered in reference to other alleged errors and further, no evidence appears in. the bill of exceptions tending to-support the claim for newly discovered evidence. The sixth asJ signment of error will be overruled.
As stated in the beginning, this-is a case where conflicting evidence should properly be submitted to and determined by a jury.
Judgment of the court below affirmed and cause remanded.
BARNES & HORNBECK, JJ., concur.